IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

          Plaintiff,

Vs.                            Case No. 07-40055-01-SAC

DAVID EARL ROBINSON,

          Defendant.

MEMORANDUM AND ORDER

This case comes before the court on defendant's motion for a new trial pursuant to Fed.R.Crim.P. 33, and defendant's motion to permit inspection of sealed documents. Both motions complain of the court's denial of access to the mental health records of the key government witness in this case. The motion for new trial additionally challenges the court's limitation of cross-examination regarding that witness's mental status. The government opposes the motions.

**Facts**

This case was set for trial on Tuesday, January 21, 2008. On the Friday before trial, Jan. 18th, at approximately 4:50 p.m., defense counsel filed a motion for leave to issue a subpoena duces tecum requiring

Osawatomie State Hospital to produce documents of "all medical records, evaluations and treatment" of a named confidential informant, pursuant to rule 17(c). Defendant asked that the records be produced, "returnable to **Honorable Sam A. Crow, United States District Judge, 444 SE Quincy, Topeka, Kansas 66683, <u>forthwith</u>**." Dk. 57, p. 2 (bold and underline in original). This motion was the court's first awareness of this matter.

The government responded by filing a motion in limine (Dk. 58) on the Sunday before trial. The motion did not object to issuance of the subpoena, but asked the court to preclude cross-examination of the confidential informant on the topic of his recent hospitalization and mental treatment because it bore no relationship to his truth or veracity and was not permissible under Rules 608 and 609.

Because the next day was a federal holiday, Tuesday morning, the 22nd, was the court's first opportunity to address the motion. The court reviewed the motion and the relevant law, then sua sponte called the confidential informant's treating psychiatrist at Osawatomie State Hospital to inquire about the CI's treatment and diagnosis.[1] The court summarized the procedural history of the case, the pending charges, the issuance of the

---

[1] This conversation was recorded and sealed. *See* Dk. 62 re: In Camera Hearing held on 1/22/2008.

subpoena, and the motion in limine. The court informed the physician that the court would issue a subpoena duces tecum for the documents and would independently review all the records, but sought the physician's verbal assessment in an attempt to avoid an unnecessary delay of trial. The court then specifically asked the treating physician whether the CI's illness would impair his present ability to tell the truth, and received the physician's unqualified opinion that it would not, as well as his rationale for that conclusion.

Soon thereafter, the court held the final pretrial status conference with counsel to address the issues raised by the motions in limine.[2] At that time the court granted defendant's 17(c) motion, and the government's motion in limine regarding the CI's mental condition, but informed counsel that it would review the medical records upon their receipt and may reconsider its decision. The court additionally informed counsel of its conversation with the CI's physician, of the physician's conclusion that the CI's condition did not impair his ability to tell the truth, and of the court's

---

[2] The government had additionally filed a separate motion in limine (Dk. 49) which is not at issue in this motion. The court ruled adversely to the government on that motion prior to and throughout trial, permitting the jury to hear about the CI's prior arrests for the purpose of showing his possible bias toward the government.

determination of the same. During that conference, defense counsel admitted that his belief that the CI's mental condition might bear on his reputation for truth or competency was "a guess."

Trial began soon thereafter with jury selection, which took the remainder of Tuesday afternoon. Wednesday morning, the 23rd, trial opened with a bench conference at defense counsel's request. Counsel asked for a continuance of the trial until he could review the subpoenaed records, noting that he had tried to get the records but had heard nothing. Defense counsel alleged the documents related to the general issue of bias and credibility, and admitted they did not go to competency. The court responded that it had received a call that morning from an attorney for the Osawatomie State Hospital and that the court expected the records to be sent that morning by fax to chambers for the court's review and not for counsel's. The court denied the request for a continuance, reminding counsel that he had already ruled on the issue, keeping the records out on the basis of Rules 608, 609 and 403. The court again assured counsel that it would review the records and if they contradicted his ruling, would revisit the issue.

Opening statements and witnesses testimony followed. Throughout

the morning the subpoenaed documents (approximately 135 pages) arrived in the court's chambers, as directed by the subpoena.[3] The court reviewed the records, found that they contained no evidence that the CI currently suffered from paranoia, psychosis, delusions, lying, or other serious mental illness that would affect his ability to tell the truth, and determined that its prior ruling of inadmissibility under Rules 608, 609, and 403 was correct.

The CI was called as a witness later that morning. Defense counsel cross examined the witness, complying with the court's order not to mention the issue of the CI's recent hospitalization or mental condition. The government rested soon thereafter. At a bench conference, defense counsel moved for a judgment of acquittal which the court denied. The court then informed counsel that he had reviewed the subpoenaed records and made the same ruling regarding that matter.

The defense then presented its case. Defendant's case consisted of four witnesses presented solely for the purpose of impeaching the CI's testimony. James Shaw, Jr., testified that the CI had dated his sister for two years, that he had had contact with the CI during that period of time, that the CI was not a person he would want to be around, that the CI's

---

[3]These documents were marked as Court's Exhibit 1 and were placed under seal, as the court informed counsel.

reputation for truthfulness was not very clear, and that he would not trust the CI with the keys to his car or house.

Defendant's "common law wife," Mary James Walker, testified solely to the ages of her children, for the sole purpose of impeaching the CI's testimony regarding the number and ages of the defendant's children.

The Principal of Williams Science and Fine Arts Magnet School testified that two of defendant's children were present at school on November 8, 2005. Similarly, a Head Start employee, testified that two of defendant's younger children were present at the Head Start program on November 8, 2005. The goal in presenting these two witnesses was solely to impeach the CI's testimony that he heard or saw some of these children at defendant's house during school hours on that same date.

In closing arguments, counsel suggested that the CI framed the defendant. The court instructed the jury to "examine and weigh an informant's testimony with greater care than the testimony of an ordinary witness," and additionally instructed on their consideration of the testimony of a drug abuser and the testimony of a government agent. After deliberating less than two and one-half hours, the jury convicted the defendant as charged. These motions followed.

**New trial standard**

A court may grant the defendant a new trial "if the interest of justice so requires." Fed.R.Crim.P. 33. In deciding a motion for new trial, the court is afforded discretion and is free to weigh the evidence and assess witness credibility, but should regard such motions with disfavor and grant them only with great caution. *United States v. Quintanilla*, 193 F.3d 1139, 1146 (10th Cir.1999), *cert. denied*, 529 U.S. 1029 (2000). The court should grant a new trial if there has been "any error of sufficient magnitude to require reversal on appeal." *United States v. Walters*, 89 F.Supp.2d 1206, 1213 (D.Kan.2000) (quotation and citation omitted), *aff'd,* 28 Fed. Appx. 902 (10th Cir.2001). The burden of proving the necessity of a new trial rests with the defendant. *United States v. Davis*, 15 F.3d 526, 531 (6th Cir.1994); *Walters*, 89 F.Supp.2d at 1213.

**Cross-examination standard**

Defendant's sole claim of error is that the court unreasonably circumscribed the defendant's ability to effectively cross-examine the confidential informant.

> One of the chief purposes of the Confrontation Clause is to secure the right of a criminal defendant to cross-examine the witnesses offered against him. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). "Cross-examination is the

principal means by which the believability of a witness and the truth of testimony are tested." *Id.* This right to cross-examination, however, is not without its bounds. "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits ... based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Thus the clause only "guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (per curiam) (emphasis in original).

*Quinonez-Gaitan v. Jacquert*, 245 Fed.Appx. 851, 853-854, 2007 WL 2452698, 2 (10th Cir. 2007). Once the defendant has been afforded a reasonable opportunity to question a witness' veracity and motivation, the trial judge enjoys broad discretion in determining the scope and extent of cross-examination. The trial court's limitation on cross-examination of a witness is reviewed for an abuse of discretion, and will be reversed "only if any error affected the substantial rights of the accused." *U.S. v. Jones,* 213 F.3d 1253, 1261 (10th Cir. 2000), *quoting United States v. Begay*, 144 F.3d 1336, 1339 (10th Cir.1998).

## Mental condition admissibility

A witness's mental history is relevant to credibility if it bears on the witness's ability to perceive or to recall events or to testify accurately.

*United States v. Moore*, 923 F.2d 910, 912-13 (1st Cir.1991). Although the Tenth Circuit has not squarely ruled on the issue, other courts have found mental condition relevant only where "the witness exhibited a pronounced disposition to lie or hallucinate, or suffered from a severe illness, such as schizophrenia, that dramatically impaired her ability to perceive and tell the truth." *United States v. Butt*, 955 F.2d 77, 82-83 (1st Cir.1992). "The modern decisional trend is to not allow cross-examination into a witness's psychiatric background where such cross-examination is sought as a means of attacking the witness's credibility." *United States ex rel. Kline v. Lane*, 707 F.Supp. 368, 370 (N.D.Ill.1989). This is because such cross-examination does little to impair credibility but may seriously damage one's reputation, invade their privacy, and assault their personality. *See United States v. Lopez*, 611 F.2d 44, 45-46 (4th Cir.1979). Oftentimes, such testimony is manifestly unfair and unnecessarily demeaning of the witness. *Id.*

      Here, the court determined that the CI's mental history was not relevant to credibility because it did not bear on his ability to perceive the events at issue, to recall the events realistically, or to testify accurately and truthfully about them. This determination was made after speaking at some

length to the CI's treating physician, as well as after independently reviewing all the subpoenaed medical records.

The court was additionally concerned that the CI's mental condition would introduce a collateral issue into the case which would confuse the jury, cause undue delay and require allowing the government to introduce testimony to explain the matter. *See United States v. Mucherino*, 311 F.2d 172, 174 (4th Cir.1962); *U.S. v. Jackson,* 863 F.Supp. 1462, 1465 -1466 (D.Kan.1994).

Lastly, under Fed.R.Evid. 403, the court balanced the probative value of the evidence against its prejudicial effect. In weighing its probative value, the court gave particular attention to the fact that the evidence was very recent.  The court nonetheless found the probative value of the evidence to be substantially outweighed by the unfair prejudice to the government, the potential for juror confusion over the diagnosed psychological disorders or sympathy for the CI due to any suicidal ideology, and by the unnecessary delay of trial.

> Federal courts sometimes permit "the impeachment of government witnesses based on their mental condition at the time of the events testified to." *United States v. Butt*, 955 F.2d 77, 82 (1st Cir.1992). However, the decision of whether to permit evidence or cross-examination of a witness regarding his or her mental condition falls within the broad discretion of the district court in attempting to

> balance possible prejudice versus probative value. *See, e.g., United States v. Moore*, 923 F.2d 910, 913 (1st Cir.1991) (noting evidence of witness' mental instability, even if relevant, may be excluded on basis of jury confusion or prejudice). "In assessing the probative value of such evidence, [a] court should consider such factors as the nature of the psychological problem, ... the temporal recency or remoteness of the [mental condition], ... and whether the witness suffered from the problem at the time of the events to which she is to testify, so that it may have affected her ability to perceive or to recall events or to testify accurately." *United States v. Sasso*, 59 F.3d 341, 347-48 (2d Cir.1995) (internal citations and quotations omitted).

*U.S. v. Franklin*, 82 Fed.Appx. 24, 26, 2003 WL 22854920, 1 (10th Cir.2003) (finding no abuse of discretion in court's limiting the cross-examination of victim regarding her mental condition). *See U.S. v. Jones*, 213 F.3d 1253, 1261 (10th Cir. 2000) (finding no abuse of discretion in trial court's refusal to allow cross-examination of a key prosecution witness on his history of mental illness).

"The soundest course ... is for the District Court to consider the medical history of the specific witness in question so as to render an informed decision regarding the relevance of that history." *U.S. v. Franklin*, 82 Fed.Appx. 24, 26, 2003 WL 22854920, 1 (10th Cir. 2003), quoting *United States v. Smith*, 77 F.3d 511, 516 (D.C.Cir.1996). This the court did, both in speaking with the CI's treating physician, and in independently reviewing the CI's relevant medical records. Although the court could have

permitted defense counsel to examine the CI outside the presence of the jury, no such request was made, and no such delay of trial was deemed necessary.

In any event, no reversible error occurred. The defendant demonstrated that he was amply equipped with other material with which to impeach the CI. The defendant fully cross-examined the CI on other critical areas including his prior arrests, the possible intervention of U.S. agents in his defense, and the CI's bias toward the government as a potential result of that arrangement. Additionally, the defendant presented four witnesses solely for the purpose of impeaching the CI who challenged the CI's testimony as it related to his memory, perception, and credibility. Thus the court believes that the CI's psychiatric history would have had a marginal effect, at best, on the jury's determination of credibility. *See United States v. Friedman*, 854 F.2d 535, 570 (2nd Cir.1988), *cert. denied*, 490 U.S. 1004 (1989) (affirming district court's quashing of Rule 17(c) subpoenas issued to two psychiatrists who had treated an important witness in the government's case, after district court had examined the documents in camera.) The substantial rights of the accused have been fully protected. Accordingly, his motion for new trial shall be denied.

**Motion to permit inspection**

Defendant's motion to permit inspection argues only that the CI's mental health records are not privileged and that the court's refusal to permit their inspection violates defendant's Sixth Amendment right to counsel and his Fifth Amendment right to due process. The court believes that this motion raises no material issues not already addressed, and thus denies it for the same reasons set forth above.

IT IS THEREFORE ORDERED that defendant's motion for a new trial (Dk. 73) and defendant's motion to permit inspection of sealed documents (Dk. 72) are denied.

Dated this 2nd day of April, 2008.

                                      s/ Sam A. Crow
                                      Sam A. Crow, U.S. District Senior Judge