IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


UNITED STATES OF AMERICA,

                Plaintiff,

Vs.                        Case No. 07-40055-01-SAC

DAVID EARL ROBINSON,

                Defendant.


**MEMORANDUM AND ORDER**

The case comes before the court on the defendant's unresolved objections to the presentence report ("PSR"). Dk. 76.  Defendant was tried and convicted by a jury of being a felon in possession of a gun. The PSR recommends a Guideline sentencing range of 33 to 41 months from a criminal history category of three and a total offense level of 18 based on the following calculations: a base offense level of 14 pursuant to U.S.S.G. § 2K2.1(a)(6) (defendant a prohibited person), and a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(4)(B) (obliterated serial number of firearm). The addendum to the PSR reflects the defendant has two unresolved objections to which the government submitted no written response. The defendant has filed a sentencing memorandum in support of

his objections (Dk. 77) and the government has filed no response. While this order will serve as the court's ruling on the unresolved objections, the court reserves the right to revisit its rulings in the event the parties offer additional arguments or new evidence at the sentencing hearing.

**Defendant's First Objection:** The defendant objects that the PSR's description of his prior arrests, as stated in paragraphs 28 and 29 of the PSR, is incorrect. Specifically, defendant contends that he was not arrested for auto burglary as stated in paragraph 28 of the PSR, and that he was in jail for a probation revocation on the date of the offense alleged in paragraph 29 (January 22, 2001).

**Ruling:** Defendant has failed to indicate that the alleged factual errors affect his sentence in any way. *See* Rule 32(i)(3)(B). None has any bearing on the calculation of his offense level or criminal history category. Nor does either alleged factual error adversely affect the district court's exercise of discretion, because the court shall sentence the defendant at the bottom of the guideline range and neither alleged arrest is significant to the court's exercise of discretion. The court thus determines that no ruling is necessary, as the defendant's objections to the accuracy of the matters stated in paragraphs 28 and 29 of the PSR address a dispute that does not

affect any guideline determination and will not be considered for any purposes under § 3553(a). The defendant has not shown the disputed information to be of the character and significance as to cause him serious prejudice before the Bureau of Prisons.

**Defendant's Second Objection:** The defendant objects that the PSR erroneously fails to make a mitigating role adjustment. Defendant contends that based upon the evidence admitted at trial, he was either an aider or abettor of another's possession and sale of the firearm, or was merely in constructive possession of the firearm. Defendant claims that the sale of the firearm was negotiated only between the confidential informant (CI) and P.J., that P.J. left the firearm at defendant's house overnight for the CI to pick up the next day, that no relationship was shown between defendant and P.J., that defendant never touched the firearm, and that defendant had the firearm in his house for only a short period of time. Defendant contends that his possession was "fleeting and transitory," and that at most, he allowed his house to be used as an escrow for the transfer of the firearm between P.J. and the CI. Based upon this, and the absence of other evidence, defendant seeks a minimal or minor role adjustment.

**Ruling:** The mitigating role adjustment in U.S.S.G. § 3B1.2 "provides a

range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2, comment. (n. 3(A)). The determination whether a defendant is entitled to such a reduction is "heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2, comment. (n. 3(c)).

A role reduction is not earned simply because a defendant is "the least culpable among several participants in a jointly undertaken criminal enterprise." *United States v. Lockhart*, 37 F.3d 1451, 1455 (10th Cir.1994) (citing *United States v. Caruth*, 930 F.2d 811, 815 (10th Cir.1991)). In evaluating culpability, a court compares the "defendant's conduct with that of others in the same enterprise, but also with the conduct of an average participant in that type of crime." *Caruth*, 930 F.2d at 815. To weigh relative culpability, "evidence must exist of other participants and their role in the criminal activity." *United States v. Sukiz-Grado*, 22 F.3d 1006, 1009 (10th Cir.1994) (internal quotation marks omitted). In short, a role reduction is appropriate only when the defendant is "substantially less culpable" than an average participant and is not required just because multiple participants with differing levels of culpability are involved. The defendant

4

has the burden of proving his minor participation. *United States v. Harfst*, 168 F.3d 398, 401-02 (10th Cir.1999).

A minimal role adjustment is limited to those defendants "who are plainly among the least culpable of those involved in the conduct of the group." U.S.S.G. § 3B1.2 comment. (n. 4). Indicative of a minimal role is a defendant's "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others." U.S.S.G. § 3B1.2, comment. (n.4). The commentary also suggests that this downward adjustment should be used infrequently. *Id.*

The court does not agree with defendant's recitation of the facts and does not believe that the facts established at trial support a role reduction. The CI testified that he had known the defendant for approximately a year before purchasing the firearm from him. Although the CI initially negotiated with P.J. on November 7, 2005, to purchase the firearm directly from him for $300, that deal did not occur. When the CI spoke with P.J. the following day, P.J. told him that the gun had been sold to Earl, whom defendant knew to be this defendant, and to go get it from Earl. When the CI relayed this information to the DEA agent with whom he was working, he was told to find the gun and buy it.

The morning of November 8, 2005, the CI called the defendant to see if he had the firearm, and defendant said that he did. The CI asked the defendant if he would sell it and defendant said that he would. The CI and the defendant then spoke about a price, and both agreed to $250. The CI referred to this conversation as "normal bargaining."

The DEA agent then outfitted the CI with a wire, drove the CI to the defendant's house in the CI's neighborhood, frisked him and found no firearm or money on him, and saw a black male in the doorway of the house at defendant's address. The CI testified that he knocked on the door of defendant's house, that defendant let him in, that he was in the defendant's kitchen, and that the defendant gave him the firearm to sell to his "uncle Jake," as they had previously spoken about.

After being in defendant's house for less than one minute, the CI left and met the DEA agent in his vehicle, where the agent took the firearm and gave the CI the money. The CI then reentered defendant's house without knocking, as he had done on previous occasions, and called defendant's name twice, as can be heard on the audio tape. He testified that the defendant told him to put the money on the refrigerator, which he did. He then left defendant's house, rejoined the DEA agent, and told him that he

had paid the defendant $250 for the firearm. The CI subsequently identified the defendant in a photographic line-up as the seller of the firearm.

No testimony was offered about how or when the defendant got the gun, but it is uncontradicted that P.J. had the gun on the 7th and defendant had it on the 8th. The testimony of the CI was consistent in all material respects with the testimony of the DEA agent, and their testimony was apparently believed by the jury, despite the defendant's attempted impeachment of the CI by several witnesses.

The facts established at trial show that the defendant purchased the firearm from P.J., that the defendant had actual possession of the firearm, that the defendant independently and actively negotiated with the CI to sell him the weapon, that the defendant required a different price than the price P.J.had required for the same firearm the previous day, that the defendant personally delivered the firearm to the CI, and that the defendant received $250 from the CI for his sale of the firearm. These facts do not support defendant's assertion that defendant was one of several participants in a jointly undertaken criminal enterprise of selling the firearm. But even if they had, defendant's conviction is not for having sold the firearm to another, but for his own possession of it. In short, although the defendant may have

possessed the weapon for a matter of hours, he intentionally exercised

authority, direction and control over it.

It is questionable whether any defendant convicted of being a felon in

possession could receive a role reduction. As the Tenth Circuit has held:

> ... § 3B1.2 does not apply to a person convicted for his own
> possession of a firearm. It states plainly: "This guideline is not
> applicable unless more than one participant was involved in the
> offense." U.S.S.G. § 3B1.2, App. Note 2. Appellant cannot point to a
> "participant" in his two possession offenses except himself. No one
> else is criminally responsible for his own possession of the sawed-off
> shotgun. Appellant's attempts to blame former owners of the shotgun,
> naming them as participants in his crime, is misplaced. That other
> persons may have independently violated gun possession laws avails
> him nothing.

*United States v. Soriano*, 190 Fed.Appx. 694, 696, 2006 WL 2212490, 1

(10th Cir. 2006).

Even assuming the potential applicability of a role reduction for

defendants convicted of this crime, the court finds that this defendant has

not carried his burden of proving he is entitled to any role reduction in this

case, based upon the facts stated above. As found by the Tenth Circuit in a

similar case:

> Defendant in essence argues that he was a minor participant in
> the sale of the weapon during which his possession occurred.
> (Citation omitted.)  But he makes no argument that he was a minor
> participant in the *possession* of a firearm the crime that formed the
> basis of his offense-level calculation. Nor could he. He either

8

possessed a gun or did not. There were no other participants in *his* possession of the gun.

*United States v. Whitener*, 80 Fed.Appx. 94, 95, 2003 WL 22464022, 1

(10th Cir. 2003) (emphasis in original). The same is true here.

**3553(a) factors**

The defendant asks the court to grant a sentence of probation, based upon 3553(a) factors and the principle of that the court should not impose a sentence greater than necessary to satisfy sentencing purposes.

A sentence must be "sufficient, but not greater than necessary," to comply with a set of sentencing considerations laid out by Congress in 18 U.S.C. § 3553(a), including "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," and the defendant's Guidelines range.

Defendant first contends that his behavior was less serious than usual in a felon in possession case, and that he is less culpable as an aider or abettor. These arguments relate to the defendant's role in the offense.

9

The court has reviewed and rejected defendant's factual arguments based on the evidence showing that this defendant possessed a firearm, negotiated its sale, and transferred possession of it in exchange for the negotiated sum of $250.

Defendant additionally alleges a "lingering doubt" about his culpability, based upon "shaky evidence" by the CI and his assertion of having passed a polygraph examination. The court has considered under § 3553(a) the defendant's argument regarding the weight of the evidence at trial. The court has no lingering doubt about defendant's guilt, based on the evidence admitted at trial, and does not agree with defendant's assessment that the evidence supporting his conviction is "shaky."

Defendant contends he was induced to transfer the gun by a close friend (the CI). Even assuming that defendant had some altruistic motivation for his offense, this fact fails to distinguish defendant's circumstances from "the mine run of cases" in which a guidelines sentence is reasonable. *Rita*, 127 S.Ct. at 2465. *Cf, United States v. Rojas-Hernandez*, 2008 WL 1746010, 3 (10th Cir. 2008) ("A great many defendants have turned to crime because of poverty or to support themselves and their loved ones, so [defendant's] case cannot be

10

distinguished on this basis from "the mine run of cases" in which a Guidelines sentence will be reasonable.") Here, the evidence shows that the defendant possessed the firearm before the Ci ever contacted him about purchasing it. His crime of possession was complete even before he transferred possession of it to the CI, and his motive for later transferring it is not a mitigating circumstance that takes his case out of the mine run of felony possession cases.

The court has additionally considered the defendant's use of marijuana, defendant's history and characteristics including his family situation, and the 19- month delay in charging the offense. The court believes these factors, coupled with the totality of the circumstances in this case, support a sentence at the lower end of the guidelines, but fail to warrant a below guideline sentence.

Lastly, defendant contends that his criminal history category overstates his propensity to commit crimes. The court has reviewed defendant's prior convictions, and notes that defendant's probation was revoked on February 18, 2001, not for his having moved to Topeka, as he alleges, but for his use of marijuana and possession of a firearm. Defendant's five-year probation was first revoked for marijuana use and

11

possession of a firearm (in 2001), and he was incarcerated.  After serving more than one and one-half years, he was paroled, but he violated his parole and was returned to prison. He was released from prison in September of 2005, then committed the present offense in November of 2005, only a few months thereafter. The closeness in time of these events demonstrate that a substantial sentence of incarceration is needed to promote respect for the law, to afford adequate deterrence to further criminal conduct, and to protect the public from further crimes by this defendant. Based upon defendant's conduct established in paragraph 24 of the PSR, the court concludes that the assigned criminal history category adequately and appropriately represents the defendant's criminal history.

IT IS THEREFORE ORDERED that the defendant's unresolved objections to the PSR are overruled.

Dated this 22nd day of April, 2008.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge